## W. W. EVANS ET AL. v. C. J. DANIEL ET AL.

### No. 959. Decided January 14, 1901.

**Certified Question.**

The Court of Civil Appeals must certify "the very question" to be decided, and this must be based upon conclusions of fact found by that court showing that the question is material to the decision of the case. Where the question of law certified becomes material only upon an hypothesis which the court has not yet determined to be the true one, and might be rendered immaterial, also, by the decision upon another question of law upon which the court has expressly reserved decision, the Supreme Court has no jurisdiction to answer the question so certified. (Pp. 281-284.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

*Jones & Sleeper* and *H. N. Atkinson*, for appellants.

*Boynton & Boynton* and *S. E. Stratton*, for appellees.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third District has certified to this court the following statement and question:

"Appellees C. J. Daniel and wife brought this action against W. W. Evans, Charles Evans, and J. W. Baker, to restrain the sale of 140 acres of land alleged to be the plaintiff's homestead. Baker was sued as sheriff and the other parties as asserting a contract lien on the alleged homestead. A judgment was rendered for the plaintiffs and the defendants Evans have appealed.

"Among other questions presented is the question hereafter stated and certified for decision, which arises upon the following facts: Daniel and his wife owned a homestead consisting of 121 acres of land incumbered by a valid lien of $2500. Daniel made a verbal contract with J. E. Parker to exchange his homestead for an undivided interest of 140 acres in a tract of 297 acres of land, Parker assuming the payment of the $2500 incumbrance on the Daniel homestead. Subsequently, Parker and other co-owners conveyed the undivided 140 acres of land to C. J. Daniel, and C. J. Daniel and his wife conveyed the 121 acres of land to Parker. At the same time, C. J. Daniel executed two promissory notes, payable to the order of J. E. Parker, each bearing interest at 10 per cent per annum, one for the sum of $2000, payable three years from date, and the other for the sum of $1513.55, payable four years from date, and each reciting that it was given in

part payment for the 140 acres of land. The deed from Parker to Daniel recited the execution of these two notes as part of the consideration for the land and expressly reserved a lien thereon to secure the payment of the notes.

"At the same time, and as part of the same transaction, Parker indorsed the notes without recourse, and they were delivered by Daniel to the defendants W. W. and Chas. Evans. As a matter of fact, the notes were not given for any part of the consideration for the 140 acres of land, nor for any other consideration coming from Parker; and W. W. and Chas. Evans had notice of that fact when they obtained the notes. There is conflict in the evidence as to how and for what purpose the defendants obtained the notes; but there is testimony tending to show that they purchased the $2000 note, paying therefor the sum of $2000, and took the other note as collateral security for the $2000 note. The money so obtained on the notes was not used for the purpose of rendering the land available as a homestead, nor for any other purpose connected with the land.

"At the time in question, the plaintiffs were not in possession of the 140 acres of land so acquired from Parker, but they submitted testimony tending to show that they had no other homestead; that they acquired the land in question intending it as their homestead. They did not take possession of it until about four years after they bought it, but submitted testimony tending to excuse themselves for not so doing. They bought it in December, 1895, but it had already been leased for the year 1895. The most of the entire 297-acre tract, of which the 140 acres in question was part, was in cultivation, but had only one small house on it. It was not divided between the plaintiffs and their cotenants until the winter of 1898 and 1899; and thereafter Daniel built a house on the 140 acres set aside to him in the partition, moved into it, and has occupied the land ever since as a homestead. However, the house was built and occupancy commenced after this suit was brought.

"In response to appellee's request for a statement of additional facts, we add that appellants had actual knowledge of the fact that the 121 acres of land conveyed by appellees to Parker was appellees' homestead. There is conflict in the testimony as to appellants' knowledge of the fact that appellees intended to make the 140 acres obtained from Parker their homestead; but whether or not they were entitled to protection against appellees' homestead right as innocent purchasers of the notes referred to, without notice of the homestead right, is a question not certified to the Supreme Court for decision. If the transaction recited in the former statement created a valid lien on the 140-acre tract, notwithstanding the fact of its being homestead, then the question of innocent purchase of the notes becomes immaterial; and whether or not the lien existed, is the only question certified for decision.

"There is some other testimony tending to explain why possession

was not taken earlier, and this court is of the opinion that evidence was submitted which will support a finding that the 140 acres of land in question became the homestead of Daniel and his wife at the time they acquired it from Parker, and the question certified for decision is this:

"Although the two notes above referred to were without consideration as between Daniel and Parker, still, if they were executed at the same time that the deeds were, and were at the same time delivered to the defendants, the Evanses, as security for money then and there advanced to C. J. Daniel, have the defendants a valid contract lien upon the land, assuming the same became the plaintiffs' homestead at the time they acquired it? In other words, on the facts stated, does this case come within the rule announced in West End Town Company v. Grigg, 56 Southwestern Reporter, 49, or is this case to be distinguished from that?"

Article 1043, Revised Statutes, regulates the manner of certifying questions to this court by the Courts of Civil Appeals in the following terms: "Whenever, in any case pending before the Court of Civil Appeals, there should arise an issue of law which said court should deem it advisable to present to the Supreme Court for adjudication, it shall be the duty of the presiding judge of said court to certify the very question to be decided by the Supreme Court, and during the pendency of the decision by the Supreme Court, the cause in which the issue is raised shall be retained for final adjudication in accordance with the decision of the Supreme Court upon the issue submitted." As this court has said on several occasions, the foregoing article requires that the Court of Civil Appeals shall certify "the very question" which is to be decided, and which must be based upon conclusions of fact found by the Court of Civil Appeals, showing that the question is material to the decision of the case before that court. Cleveland & Co. v. Carr, 90 Texas, 393.

In submitting the certificate now before the court, the Court of Civil Appeals states at length the testimony in the case upon the different issues, but fails to state its conclusion as to the effect of that testimony. This court has no power to determine questions of fact, and can only answer such questions as are based upon conclusions of fact drawn and stated by the court which submits them. The honorable Court of Civil Appeals does not find as a fact that the land in question became the homestead of Daniel and his wife when they acquired it, but bases the question submitted upon the hypothesis, "assuming the same became the plaintiffs' homestead at the time they acquired it." In effect, the statement is, what is the rule of law that should govern this case if the Court of Civil Appeals should find that it was the homestead of Daniel and his wife at the time that the deed was made to Daniel from Parker? In its additional findings, the court expressly reserves another question which is prominent in the statement,—whether the lien of the notes held by Evans and others

would not be binding upon the land if that court should find that the homestead right attached, but that Evans had no notice of that fact at the time that he purchased the notes, and that he was a purchaser for a valuable consideration and without notice of the homestead claim. Taken altogether, the statement leaves the matter in shape that any answer to the question might become immaterial to the decision of the case. It is not shown by the statement accompanying the question that it is "the very question" in the case which is authorized by the law to be submitted to this court for decision. We therefore have no jurisdiction to answer the question, and the certificate is dismissed.